CabutheRS, J.,
delivered the opinion of the court.
The facts of this case, so far as they are necessary to be shown to raise the questions to be decided, are these: Matthew Douglass, of Warren county, being the owner of a tract of land of 311 acres, four negroes, stock, &c., and having five adult children, Joel, John, Matthew, and Milly married to George Harrison, and Polly married to Charles W. Smith, made his will 19th November, 1843, in which, after giving each child $600, he gave all the remainder of his estate to the five, to be equally divided between them by his executors. He died in September, 1847. The executors refused to act, and administration, with the will annexed, was granted to his two sons, John and Joel, and his son-in-law, George Harrison, the defendant. The said administrators, after advertisement, proceeded to sell all the property, on the 4th of November, 1847, to the highest bidder. The land, which is the only matter in controversy, was sold in three'lots, and was bought by the defendant, Harrison, for $2628.
To set aside that sale for fraud and want of au *384 thority, this bill is filed by all the other devisees, against the said Harrison. The bill charges that the land was worth about $3500, and proposes to give that amount for it. ;
Two days before the sale, the following agreement in writing was entered into, and signed by all concerned, except Matthew, who was then in Missouri, and knew nothing of the proceedings:
‘•Whereas, the undersigned legatees of Matthew Douglass, are desirous of selling the land and negroes belonging to said estate, and being all of fall age, do bind ourselves to the purchaser of the negroes and of the land, that we will convey respectively, our title to the purchaser of the land and negroes; and also, we bind ourselves to guarantee the title of Matthew Douglass, jr., in and to the same, who is now absent in Missouri. This 2nd November, 184V.
Joel Douglass, (l. s.)
GtEORGE TIarrisoh, (l. s.)
John Douglass, (l. s.)
Mart Smith, (l. s.)
Millet Haeeisoh, (l. s.)
O. W. Smith, (l. s.)
(Test.) A. W. Miller,
Wm. Neal.”
The auctioneer selected by the parties, knocked off the first lot to Harrison, at considerably less than its value, and without crying it the usual length of time, and after only two bids had been made; upon which, complaint was made at the time by the Douglasses. But the sale progressed, and the bidding was sharp and *385 animated, the principal contest being between the said Harrison and the two Douglasses.
The bill charges, that there was a fraudulent combination between Harrison and the cryer. Rotes were executed by Harrison for the amount bid by him, and they were delivered over to and received by his co-administrators, the said Joel and John Douglass.
This bill was filed the 15th March, 1848, to set aside the sales upon the various grounds before stated. The defendant, Harrison, filed a cross bill for a specific performance of the contract of Nov. 2, 1847, and to recover damages for the failure of Matthew Douglass to unite in the conveyance of the title to the land.
The chancellor sustained the sale, dismissed the original bill, except as to Matthew, setting aside the sale as to him, and ordering a resale for division between him and said Harrison, allowing said Matthew one fifth-of the purchase money. He also made a reference to-the Master to ascertain the damages to which Harrison was entitled under the said covenant of 2nd November,
Upon this state of facts, various questions are presented :
1. Was there any sufficient authority for the sale of the land? We think not. A ,valid sale could only be made in one of three ways: , 1. By authority of the will. 2. By a decree of court for the purpose of partition: or 3. By a valid agreement of all the parties interested.
It is not pretended, that the sale was under any power given in the will, or the decree of court. But it is insisted, that the administrators, with the will annexed, could, and did make a valid and binding sale, *386 •under the said agreement of Noy. 2, 1847, at least as to all the shares .except that of Matthew. We think the sale was a nullity, for several reasons. It was an •entire thing, and must bind all or none. Matthew never consented to it, and it is clearly void as to him. Mary Smith and Milly Harrison being married women, gave no consent which the law will recognize. They cannot divest themselves of their title to land, but in the single mode pointed out by law — privy examination before the proper authority. Their husbands could not bind them. So here are three out of five whose consent was not obtained to the sale of the land. Their rights were not affected by the transaction, and they have a right to claim that the whole proceeding be set aside. This defect in the power and authority to sell, renders it a void sale as to all those who were competent to consent, as well as to those who were not or did not. It was a sale made without authority, or under a void power, or without power, and can bind no one, but must be set aside entirely.
This view of the case renders it unnecessary to discuss the question of fraud or unfairness in the sale, or the right of defendant to purchase, as he was tenant in common, and administrator with the will annexed, without the express consent of all concerned. It is sufficient for this case, to place it on the ground first stated.
The decree of the chancellor is reversed, and a decree will be here made, that the sale of the land be set aside, and the same again sold to the highest bidder, upon a credit of twelve and eighteen months. An account will be taken of the rents and profits on the one side, and such valuable improvements as enhance the *387 value of the land, on the other: And the cause remanded for execution of the decree.